Stephen DAVIDSON and Mary Parshall, Plaintiffs-Appellants/Cross-Appellees,

v.

Joseph KEENAN, Suffolk County District Attorney's Office and Suffolk County Department of Civil Service, Defendants-Appellees/Cross-Appellants.

Nos. 1058, 1214, Dockets 83–9065, 84–7005.

United States Court of Appeals, Second Circuit.

Argued April 12, 1984.

Decided July 18, 1984.

Barbara Simon, Mineola, N.Y., (Solerwitz, Solerwitz & Leeds, Mineola, N.Y., of counsel), for plaintiffs-appellants/cross-appellees.

Theodore D. Sklar, Asst. County Atty., Hauppauge, N.Y. (Martin Bradley Ashare, Suffolk County Atty., Hauppauge, N.Y., of counsel), for Suffolk County Dist. Atty.'s Office and Suffolk County Dept. of Civil Service.

Robert Schaufeld, Mineola, N.Y. (Axelrod, Cornachio & Famighetti, Mineola, N.Y., of counsel) for Joseph Keenan.

Before LUMBARD, MANSFIELD and WINTER, Circuit Judges.

**130**

LUMBARD, Circuit Judge:

Plaintiffs-appellants Stephen Davidson and Mary Parshall appeal from the dismissal of their § 1983 civil rights action in the Eastern District of New York, Glasser, J. Defendants-appellees Suffolk County District Attorney's Office, Suffolk County Department of Civil Service, and Joseph Keenan, an employee of the Suffolk County District Attorney's Office, cross-appeal from the denial of their motion for attorneys' fees, pursuant to 42 U.S.C. § 1988.

We affirm the dismissal of appellants' suit, and reverse and remand for reconsideration the denial of appellees' motion for attorneys' fees.

Appellants' § 1983 claim is based on an alleged conspiracy between members of the Suffolk County District Attorney's (D.A.'s) Office and the Suffolk County Department of Civil Service to bypass appellants for civil service appointment as Detective-Investigators with the D.A.'s Office. The events alleged in support of that claim are as follows.

In April, 1978, appellants Stephen Davidson and Mary Parshall, both then employed by the Suffolk County D.A.'s Office as probation officers, and appellee Joseph Keenan, then employed as a provisional Detective Investigator in the same office, took a Suffolk County civil service examination for the permanent position of Detective Investigator. Davidson, Parshall and Keenan were ranked 20, 22 and 44, respectively, on the certified list of eligible candidates issued on October 20, 1978. Subsequent modified lists continued to rank Davidson, Parshall and Keenan in the same relative positions.

On May 22, 1979, Keenan instituted a proceeding in New York State Supreme Court, Suffolk County, pursuant to Article 78 of the New York Civil Practice Law, to strike from the list of eligibles Parshall, Davidson, and three other candidates who ranked above him. Parshall, Davidson, and two of the three other candidates filed a cross-motion to have Keenan struck from the list on the ground that he had concealed on his application the fact that he did not meet the residency requirements. On April 23, 1980, the state court struck Keenan's name from the list, finding that his misstatement of residence was a "fraud of a substantial nature," but denied Keenan's motion to strike appellants' names.

Thereafter, eleven candidates, not including appellants, were appointed from the eligibles list to the position of Detective Investigator. Some of those appointed had been ranked lower than appellants on the list. On August 14, 1981, appellants commenced this action in the Eastern District, alleging that Keenan and the Suffolk County D.A.'s Office had conspired with the Suffolk County Department of Civil Service to bypass appellants for appointment, in retaliation for appellants' having successfully moved in the Article 78 proceeding to have Keenan's name struck from the list. Charging that the conspiracy violated rights guaranteed to them under the First, Fifth, Seventh, Ninth and Fourteenth Amendments, appellants sought declaratory and injunctive relief and damages pursuant to 42 U.S.C. §§ 1983 and 1985 and 28 U.S.C. § 2201.

By a pretrial scheduling order dated June 28, 1982, discovery was to be completed by January 15, 1983, and trial was set for September 19, 1983. Although discovery was subsequently extended to March 31, 1983, to allow Davidson and Parshall time to depose defendants, they did not do so. On June 16, 1983, defendants' attorney contacted Davidson's and Parshall's attorney to request that he discuss with his clients the possibility of discontinuing their action on the grounds that it was frivolous. On September 7, 1983, plaintiffs' counsel advised that his clients wished to proceed with the action.

Trial was rescheduled for November 7, 1983. On September 28, 1983, defendants moved to dismiss the complaint under Fed. R.Civ.P. 12(b)(6), or, in the alternative, Fed. R.Civ.P. 56(b), and for an award of attorneys' fees from plaintiffs pursuant to 42 U.S.C. § 1988. In support of their Rule 12(b)(6) motion to dismiss, defendants argued that as to all three defendants, plain-

tiffs had failed to allege any specific facts to support their conclusory allegations either of deprivation of constitutional rights,[1] see Batista v. Rodriquez, 702 F.2d 393, 397 (2d Cir.1983), or of conspiracy under 42 U.S.C. § 1985, see Koch v. Yunich, 533 F.2d 80, 85 (2d Cir.1976). Additionally, they argued that as to the two municipal defendants, plaintiffs had failed to allege that the objectionable conduct charged was the result of a governmental policy or custom, as required by Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny, see, e.g., Batista v. Rodriquez, supra. Finally, they argued that as to defendant Keenan, plaintiffs had failed to plead any facts indicating that the objectionable conduct alleged was pursued under color of state law.

In support of their motion in the alternative for summary judgment, defendants submitted, inter alia, an affidavit from Morton Stark, Chief of Examinations for Suffolk County Department of Civil Service, stating that plaintiffs were lawfully bypassed for appointment pursuant to § 61 of the New York Civil Service Law.[2] They also submitted an affidavit from George Holmes, Chief Investigator for the Suffolk County D.A.'s Office, stating that Keenan, as Holmes's subordinate, had no authority over the appointments made, and noting that two of the three other cross-movants involved in the successful Article 78 proceeding to remove Keenan from the eligibles list had not been bypassed for appoint-

ment, thereby refuting plaintiffs' retaliation theory.

Defendants' motion to dismiss, returnable on October 14, 1983, was served on plaintiffs' attorneys and filed with the court on September 30, 1983—several days before the ten-day notice deadline set by the motion practice of Judge Glasser and Fed.R.Civ.P. 56(c). When the motion was called on October 14, counsel for plaintiffs, who had submitted no papers in opposition to the motion, requested additional time to obtain affidavits from non-party witnesses. Noting that plaintiffs should have sought an extension of time to file affidavits prior to the motion return date, see Fed.R.Civ.P. 56(f), the court denied plaintiffs' belated request and deemed the motion to be submitted on October 14 unopposed.

On October 20, Judge Glasser's chambers received from plaintiffs' counsel an unfiled "Notice of Cross-Motion to Extend Time to Answer Defendants' Motion," with supporting papers. Declining to consider the opposition papers on the ground that they were untimely filed, on November 30, 1983, the court granted summary judgment to defendants on the basis of their unopposed statement of material facts. The court denied defendants' motion for attorneys' fees, on the ground that as plaintiffs had acted under advice of counsel to proceed in their suit, they were deemed to have acted in "good faith" for purposes of 42 U.S.C. § 1988.

Plaintiffs appeal from the grant of summary judgment, on the ground that the

---

**1.** Defendants argued that the only constitutional claim advanced by plaintiffs that was not patently frivolous on its face was the one arising under the due process clause of the Fourteenth Amendment, and that as to that claim, plaintiffs failed to allege any facts to suggest that they were deprived of a property interest when they were bypassed on the civil service list for the position of Detective-Investigator. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**2.** New York Civ.Serv.Law § 61 (McKinney 1983) provides in relevant part that: "Appointment or promotion from an eligible list to a position in the competitive class shall be made by the selection of one of the three persons

certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment or promotion...." New York courts have held that persons on an eligible list have no vested right to appointment, but may only insist that no appointments be made to vacant positions except in accordance with that procedure. See, e.g., Yates v. Grecco, 85 A.D.2d 817, 445 N.Y.S.2d 623, 624 (3d Dept.1981); Blake v. O'Connor, 75 Misc.2d 135, 136, 346 N.Y.S.2d 935 (Sup.Ct. Renssalaer Co.1973). There is no evidence in the record to suggest that any appointments to the position of Detective-Investigator were made other than in accordance with proper procedure here.

court abused its discretion in refusing to consider their late-filed papers in opposition to the motion. Defendants cross-appeal from the denial of attorneys' fees, asserting that the court applied an improper standard in reviewing their claim.

The district court properly granted appellees' motion for summary judgment. Under the Federal Rules and the rules of the district court, appellants were required to oppose or otherwise respond to appellees' motion to dismiss *prior* to the return date. Fed.R.Civ.P. 56(c); Motion Practice of District Judge I. Leo Glasser, condition 2. Had appellants applied to the court within that prescribed period for an extension of time to respond, the court in its discretion would have been free to grant such an extension "for cause shown," pursuant to Fed.R.Civ.P. 6(b)(1) or 56(f). However, as appellants failed to communicate their difficulties to the court at all until the hearing on October 14th and did not move for an extension of time until October 20th, their motion is governed by Rule 6(b)(2), not Rule 6(b)(1).

■ Rule 6(b)(2) provides that the court may "upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." The determination whether neglect is "excusable" in a particular case rests with the sound discretion of the district court. *Manhattan-Ward, Inc. v. Grinnell Corporation*, 490 F.2d 1183, 1186 (2d Cir.1974). We find no abuse of that discretion here. Appellants excuse their failure to make a timely request on the ground that they were unable to locate until after the return date of the motion two nonparty witnesses whose affidavits were essential to counter appellees' motion to dismiss. Accepting *arguendo* the truth of that assertion, it simply does not explain why appellants failed to *request* additional time prior to the return date of the motion. As it is undisputed that appellees' motion to dismiss was properly served on appellants on September 30, we conclude that the appellants' failure to request an extension of time to respond

prior to the return date, as soon as it became clear that the necessary affidavits could not be obtained within the prescribed time, was the result of inadvertence or oversight by counsel. Even if the district court in its discretion could have deemed counsel's oversight to be "excusable neglect" here, *but see Sherrod v. Piedmont Aviation, Inc.*, 516 F.Supp. 39, 41 n. 1 (E.D.Tenn., 1978); *Mason v. British Overseas Airways Corp.*, 20 F.R.D. 213 (S.D.N.Y.1957), it surely was not required to do so. We therefore find no abuse of discretion in the court's declining to consider appellants' out-of-time response. *See Farina v. Mission Investment Trust*, 615 F.2d 1068, 1076 (5th Cir.1980).

In the absence of a response from appellants, the district court properly decided appellees' motion to dismiss on the basis of their uncontroverted statement of facts and supporting affidavits. *See* Fed.R. Civ.P. 56(e); *Fitzke v. Shappell*, 468 F.2d 1072, 1077 (6th Cir.1972) (statements contained in uncontroverted affidavit in support of summary judgment must be accepted as true); *Morrison v. Walker*, 404 F.2d 1046, 1048–49 (9th Cir.1968) (same). As we conclude—and appellants apparently do not dispute—that defendants' version of the facts, if accepted, would justify summary judgment in their favor, we affirm the district court's dismissal.

■ We are, however, more troubled by the district court's denial of defendants' motion for attorneys' fees. The statute governing attorneys' fees in § 1983 suits, 42 U.S.C. § 1988, provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorneys' fee as part of the costs." When the prevailing party is the defendant, that language has been construed to require the defendant to show that the action was " 'frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.' " *Hughes v. Rowe*, 449 U.S. 5, 14–15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980), *quoting Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (Title VII

case); *see also Harbulak v. County of Suffolk,* 654 F.2d 194 (2d Cir.1981); *Carrion v. Yeshiva University,* 535 F.2d 722 (2d Cir.1976).

Applying that standard, the district court concluded that "Plaintiffs ... acted on advice of counsel to proceed in this matter. I find that plaintiffs have acted in good faith, and therefore, defendants' motion for attorneys' fees is denied." We assume that to mean that *because* plaintiffs relied in good faith on the advice of counsel in deciding to proceed with their suit, their actions could not be adjudged "frivolous, unreasonable or groundless." If so, the court erroneously applied the standard announced in *Christiansburg.*

■ The Supreme Court expressly stated in *Christiansburg* that, while "plaintiff's subjective bad faith" might provide "an even stronger basis for charging him with attorneys' fees incurred by the defense," *id.,* 434 U.S. at 422, 98 S.Ct. at 700, it was not "a necessary prerequisite to a fee award against him." *Id.,* at 421, 98 S.Ct. at 700. The proper test for that award is whether the claim itself is clearly meritless. As we held in *Prate v. Freedman,* 583 F.2d 42, 48 (2d Cir.1978), in awarding attorneys' fees to defendant in a Title VII case, if a claim is groundless, the mere fact that the plaintiff relies on his attorney's erroneous contrary advice does not relieve him of liability: "[A]n attorney is his client's agent and representative; the client retains ultimate authority over the conduct of the litigation ... Whether or not [plaintiffs'] reliance on their attorneys' judgment was misplaced, they are legally responsible for the filing of these actions. The conse-

quences of their attorneys' mistakes should not be visited on the [other side] ..."

■ Having denied appellees' motion for attorneys' fees on the basis of appellants' subjective good faith, the court made no findings as to whether appellants' claim itself was "frivolous, unreasonable, or groundless." We therefore reverse the denial of defendants' motion for attorneys' fees, and remand for reconsideration.

Affirmed in part; reversed and remanded in part. Appellees' motion for costs for the appeal denied.

MANSFIELD, Circuit Judge (concurring):

I concur in the majority's decision to reverse the denial of defendants' request for attorney's fees and to remand to the district court for reconsideration of the question of fees. I write separately because in my view, set forth in *General Camera Corporation v. Urban Development Corporation,* 734 F.2d 468 at 469 (2d Cir.1984) (Mansfield, J., concurring), the standard for awarding attorney's fees to prevailing defendants under 42 U.S.C. § 1988 is slightly different from that adopted by the majority, which applies to actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), *see Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

In Title VII cases, upon which the majority relies, e.g. *Christiansburg* and *Prate v. Freedman,* 583 F.2d 42, 48 (2d Cir.1978), the standard is whether the plaintiff's claim was "frivolous, unreasonable or groundless." As the legislative history of § 1988 makes clear,[1] however, Congress

---

**1.** The Senate Report with respect to § 1988 states:

"It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by S. 2278, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Such

"private attorneys general" should not be deterred from bringing good faith actions to vindicate the fundamental rights here involved by the prospect of having to pay their opponent's counsel fees should they lose. *Richardson v. Hotel Corporation of America,* 332 F.Supp. 519 (E.D.La.1971), aff'd 468 F.2d 951 (5th Cir.1972). (A fee award to a defendant's employer, was held unjustified where a claim of racial discrimination, though meritless, was made in good faith.) Such a party, if unsuccessful, could be assessed his oppo-

intended the standard under § 1988 to be whether the plaintiff acted in objective bad faith, i.e., whether his action was frivolous, meritless, or vexatious. Under either standard, of course, the plaintiff's subjective reliance on an attorney's advice would not necessarily preclude an award to the defendant.

nent's fee only where it is shown that his suit was clearly frivolous, vexatious, or brought for harassment purposes. *United States Steel Corp. v. United States,* 385 F.Supp. 346 (W.D. Pa.1974), aff'd, 9 E.P.D. ¶ 10,225 (3d Cir.1975). *This bill thus deters frivolous suits by authorizing an award of attorneys' fees against a party shown to have litigated in "bad faith" under the guise of attempting to enforce the Federal rights created by the statutes listed in S. 2278."* S.Rep. No. 94–1011, 94th Cong., 2d. Sess. 4–5, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912 (emphasis supplied).

Similarly, the House Report accompanying § 1988 states:

"[T]he courts have developed a different standard for awarding fees to prevailing defendants because they do "not appear before the court cloaked in a mantle of public interest." *United States Steel Corp. v. United States,* 519 F.2d 359, 364 (3d Cir.1975). As noted earlier such litigants may, in proper circumstances, recover their counsel fees under H.R. 15460. To avoid the potential "chilling effect" noted by the Justice Department and to advance the public interest articulated by the Supreme Court, however, the courts have developed another test for awarding fees to prevailing defendants. Under the case law, such an award may be made only if the action is vexatious and frivolous, or if the plaintiff has instituted it solely to harass or embarrass the defendant. *United States Steel Corp. v. United States, supra* at 364. *If the plaintiff is "motivated by malice and vindictiveness, then the court may award counsel fees to the prevailing defendant. Carrion v. Yeshiva University,* 535 F.2d 722 (2d Cir.1976). *Thus if the action is not brought in bad faith, such fees should not be allowed.* See, *Wright v. Stone Container Corp.,* 524 F.2d 1058 (8th Cir.1975); see also *Richardson v. Hotel Corp. of America,* 332 F.Supp. 519 (E.D.La.1971), *aff'd without published opinion,* 468 F.2d 951 (5th Cir.1972). This standard will not deter plaintiffs from seeking relief under these statutes, and yet will prevent their being used for clearly unwarranted harassment purposes." H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 6–7 (1976) (emphasis supplied).